**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIELLE A. BROOKS,** | : | **CIVIL ACTION NO. 1:23-CV-1556** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NVK LOGISTICS, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Danielle A. Brooks brings this retaliatory discharge employment

case against a former employer, defendant NVK Logistics, Inc.  She seeks back pay

as well as compensatory and punitive damages.  The Clerk of Court has entered

default against NVK, and Brooks now moves for default judgment pursuant to

Federal Rule of Civil Procedure 55(b)(2).  We have conducted an evidentiary

hearing on the matter, and we will grant Brooks' motion and award her certain

requested relief.

**I.    Factual Background & Procedural History**[1]

NVK is a California corporation and commercial transportation company

authorized to perform interstate property-carrying.  (See Doc. 1 ¶¶ 3-4; see also

Doc. 8 ¶ 4).  The company hired Brooks as a commercial truck driver out of its

---

[1] The following factual recitation is drawn from the allegations in Brooks'
complaint (Doc. 1); the testimony she provided at an evidentiary hearing on
October 29, 2024, (see Doc. 30, 10/29/24 Hr'g Tr.); and NVK's answer, which was (as
described in more detail *infra*) submitted before counsel withdrew their appearance
on behalf of the company.  NVK failed to retain new counsel before the applicable
deadline, (see Doc. 8), resulting in entry of the present default.

Middletown, Pennsylvania, warehouse location in March 2022, (see Doc. 1 ¶ 3, 9; see also Doc. 8 ¶¶ 3, 9), and paid her $30 per hour, (see 10/29/24 Hr'g Tr. 4:11-12, 18:3-6). Brooks contends that NVK unlawfully terminated her employment in retaliation for reporting to dispatch, her direct manager, and another supervisor[2] that the company was violating several provisions of the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. § 31105, a federal law that prescribes standards for, among other things, working conditions and HAZMAT protocols in the interstate ground shipping industry. (See Doc. 1 ¶¶ 11-27). More specifically, NVK required Brooks to work hours exceeding the statutory maximum; wrote-off and wrote-down her time to provide the appearance of compliance; and forced her to transport hazardous materials (specifically, batteries) without the proper protective measures in place. (See 10/29/24 Hr'g Tr. 6:2-10:1 (overworking and time-card manipulation); see id. at 11:18-12:23 (HAZMAT issues)). On November 13, 2022, after Brooks reported these violations to dispatch and management, NVK terminated her employment.[3] (See id. at 10:9-15 (report of wage and hour issues to management);

---

[2] While employed by NVK, Brooks communicated primarily with dispatch and her direct supervisor, a driver manager named Tim. (See 10/29/24 Hr'g Tr. 6:8-14). Paragraph 15 of her complaint further states that Brooks reported STAA violations to the owner of NVK, Joseph Kramarenko. (See Doc. 1 ¶ 15). This allegation is consistent with Brooks' testimony at the damages hearing, during which she mentioned having reported her concerns to dispatch, Tim, and another supervisor, though she could not recall that supervisor's name. (See 10/29/24 Hr'g Tr. 10:2-11).

[3] The parties dispute the termination date. Brooks claims it was November 13, 2022, (see Doc. 1 ¶ 9), while NVK contends that it was November 10, 2022, (see Doc. 8 ¶ 9).

id. at 12:24-14:4 (report of HAZMAT issue to dispatch); id. at 14:9-18 (subsequent reduction in hours and termination)).

Though Brooks' allegations and testimony appear to be consistent, the record contains some evidence that NVK had a non-retaliatory reason to terminate Brooks: namely, that the company could not provide her a vehicle to drive after her designated truck was damaged in an accident caused by a different driver. (See id. at 14:23-15:20). Brooks rejoins that when a different truck she was previously assigned required maintenance on a prior occasion, NVK provided her a loaner vehicle so that she could work her regular schedule—all to say that the truck-availability rationale is pretextual. (See id. at 15:20-17:2).

After NVK fired her, Brooks immediately began seeking employment within trucking and other industries but was unsuccessful for approximately three months. (See id.) She first found work as a trucker for Tyler Transport in February 2023 until she was laid off in November 2023 because Tyler lost a third-party contract. (See id. at 19:5-22). Brooks remained unemployed until late August or early September 2024, when she started her current position at EVO Transportation, where she works part-time (24 hours a week) as a driver earning $29 per hour. (See id. at 19:25-20:15). EVO Transportation cannot provide Brooks full-time work at this time, (see id. at 23:19-24:1), and she believes that her chances of obtaining such work as a driver for other employers are low, though she continues to pursue opportunities, (see id. at 24:5-25:20).

Brooks' experience at NVK had significant financial and emotional consequences. During her tenure there, Brooks felt "conflicted" because the

procedures NVK followed put her CDL license at risk and exposed her to additional

liability, including fines.  (See id. at 20:24-22:19).  She was so worried that she

contacted the Federal Motor Carrier Safety Administration ("FMCSA") to inquire

about the range of punishments to which NVK's policies exposed her.  (See id.

at 22:20-23:7).  Brooks' abrupt termination also significantly disrupted her life, as

her emotional testimony and earnest demeanor at the hearing in this matter plainly

demonstrated.  (See, e.g., id. at 20:16-21:11).  She went from working between

50 and 80 hours a week at $30 an hour to earning nothing.  (See id. at 18:7-19:4).

Financial challenges forced Brooks to sell a townhome she owned and move into a

rented efficiency apartment.  (See id. at 15:6-19; 23:8-18).  Brooks also reported

experiencing more generalized stress and anxiety; a return to her former career—

housekeeping, which paid $8 an hour—felt particularly daunting.  (See id. at 21:4-

11).

Despite the circumstances, Brooks worked swiftly to advance her STAA

claim in the proper forum: she submitted a timely complaint to the United States

Secretary of Labor, (see Doc. 32-1), before filing her complaint in this matter

pursuant to the STAA's kick-out provision[4] on September 18, 2023, (see Doc. 1).  An

---

[4] The STAA affords aggrieved employees an administrative process to
enforce their rights and provides federal district courts original subject-matter
jurisdiction over STAA claims by virtue of a "kick-out" provision only when the
employee (1) filed a complaint with the Secretary of Labor within 180 days of the
adverse employment action that forms the basis of the complaint, and (2) did not
receive a final decision from the Secretary within 210 days of their initial filing.  See
49 U.S.C. § 31105(a)-(e).  The documentation attached to Brooks' response to our
show-cause order of January 2, 2024, reflects that she meets both jurisdictional
prerequisites.  (See Docs. 31, 32).  Brooks filed a timely complaint with the
Secretary of Labor alleging retaliatory discharge against NVK on December 9, 2022,

executed waiver of service form was filed on the docket three days later. (See

Doc. 4). NVK filed an answer in which it denied the substance of Brooks'

allegations. (See Doc. 8). And an initial referral to the court-annexed mediation

program was unsuccessful. (See Docs. 13, 14).

On May 20, 2024, three months after the failed mediation, counsel for NVK

moved to withdraw as counsel. (See Doc. 17). We ordered defense counsel to serve

a copy of their motion and our order on, and to meet and confer with, their client.

(See Doc. 18). Our order also warned NVK that if we were to grant the withdrawal

motion, the company could face default judgment if it did not retain successor

counsel in a timely manner as directed by the court. (See id.) NVK did not respond

to our order, and so we granted the motion to withdraw and ordered the company

to retain new counsel by no later than July 12, 2024. (See Doc. 20). When NVK

failed to retain counsel in time, the Clerk of Court entered default against the

company on Brooks' request. (See Docs. 23, 24). Brooks then filed the instant

motion for default judgment, and we convened an evidentiary hearing to assess

damages on October 29, 2024. NVK did not respond to the motion or appear at the

hearing, despite receiving constructive notice of both. (See Doc. 25-1 (proof of

service, motion for default judgment); Doc. 27 (order scheduling hearing); Doc. 29

---

less than a month after the company terminated her employment in November
2022. (See Doc. 32-1). Brooks also provided email exchanges demonstrating that
her administrative complaint was pending for over 210 days without a final decision
before she filed the complaint initiating this matter. (See Docs. 32-2, 32-3, 32-4, 34-
5).

(minute entry noting nonappearance of NVK at the damages hearing)).  The motion is now ripe for disposition.

## II.   Discussion

Federal Rule of Civil Procedure 55 governs default judgments.  See FED. R. CIV. P. 55.  Once default has been sought and entered in accordance with Rule 55(a), the non-defaulting party may move for default judgment pursuant to Rule 55(b).  See FED. R. CIV. P. 55(a), (b)(2).  The court is entitled to take the facts in the operative pleading—except those pertaining to damages—to be true for purposes of resolving the motion.  See DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)); 10A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2688.1 (4th ed. 2018) (citing, inter alia, Comdyne I, 908 F.2d 1142).  A district court evaluating a motion for default judgment must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).[5]  Whether to enter default judgment is left to the sound discretion of the district court.  See id.

### A.   Merits

Brooks advances a single claim of retaliatory discharge.  The STAA prohibits employers from discharging, disciplining, or discriminating against certain

---

[5] In Chamberlain, the panel cited to United States v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984), for the proposition that these "[t]hree factors

employees for engaging in protected activities as defined by the statute.  49 U.S.C.

§ 31105(a)(1).  These activities include accurately reporting their hours, <u>see</u>

49 U.S.C. § 31105(a)(1)(C); refusing to operate a vehicle in violation of a safety-,

health-, or security-related legal requirement, <u>see</u> <u>id.</u> § 31105(a)(1)(B); and initiating

(or appearing to be on the verge of initiating) or participating in a proceeding

related to a purported violation, <u>see</u> <u>id.</u> § 31105(a)(1)(A).

To succeed, a plaintiff claiming retaliatory discharge must demonstrate by a

preponderance of the evidence that: "(i) they engaged in protected activity, (ii) the

employer knew of the protected conduct, (iii) their employer took an unfavorable

---

control whether a default judgment should be granted." <u>Chamberlain</u>, 210 F.3d
at 164 (citing <u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 195).  That decision, however,
and all other decisions cited therein were examining whether to *set aside* an entry
of default or default judgment, not whether to *enter* default judgment.  <u>See</u>
<u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 195 (motion to set aside entry of default and
default judgment) (citing <u>Gross v. Stereo Component Sys., Inc.</u>, 700 F.2d 120, 122 (3d
Cir. 1983) (motion to set aside default judgment); then <u>Feliciano v. Reliant Tooling
Co.</u>, 691 F.2d 653, 656 (3d Cir. 1982) (same); and then <u>Farnese v. Bagnasco</u>, 687 F.2d
761, 764 (3d Cir. 1982) (motion to set aside entry of default)).  The <u>Chamberlain</u>
decision does not explicitly acknowledge that it is extending the "set-aside" factors
to a new and different context, nor does it express a rationale therefor.  As one
Third Circuit judge has observed, the actions of entering a default judgment and
setting one aside are "clearly distinguishable," and the <u>Chamberlain</u> court "may
have unwittingly imposed an unrealistic and misplaced burden on plaintiffs, and
unduly constrained the discretion of district courts."  <u>Hill v. Williamsport Police
Dep't</u>, 69 F. App'x 49, 52-53 (3d Cir. 2003) (Rendell, J., concurring)
(nonprecedential).  We echo and fully agree with Judge Rendell's concerns.
Common sense dictates that the burden of proffering a meritorious defense should
fall upon the shoulders of a defendant who seeks to set aside a default; we see no
justification for transposing that burden to a plaintiff seeking an entry of default
judgment against a defendant who has failed to appear.  Nonetheless, this court is
bound by <u>Chamberlain</u> until and unless our court of appeals revisits the decision *en
banc*.  <u>Id.</u> at 52 (majority opinion) (observing the district court "of course had no
choice" but to follow <u>Chamberlain</u>); <u>see also, e.g.</u>, <u>GEICO v. Pennsauken Spine
& Rehab P.C.</u>, No. 17-11727, 2018 WL 3727369, at *4 n.1 (D.N.J. Aug. 6, 2018).

employment action against them. and (iv) the protected activity was a contributing factor to the employer's adverse employment action." See Greatwide Dedicated Transp. II, LLC v. U.S. Dep't of Lab., 72 F.4th 544, 553-54 (4th Cir. 2023) (noting that STAA incorporates legal burdens set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121(b)(2)(B); and articulating relevant four-part standard to set forth *prima facie* case of discrimination) (citing 49 U.S.C. § 31105(b); Formella v. U.S. Dep't of Lab., 628 F.3d 381, 389 (7th Cir. 2010); Weatherford U.S., L.P. v. U.S. Dep't of Lab., Admin. Bd., 68 F.4th 1030 (6th Cir. 2023)).

The *allegata* in Brooks' complaint, taken together with her testimony, which we find highly credible, demonstrate that NVK discriminated against her for engaging in protected activity.  Brooks, for one, testified that she reported STAA violations to dispatch and management, demonstrating that NVK knew Brooks engaged in protected activity before firing her. (See 10/29/24 Hr'g Tr. 9:23-10:22; 14:1-16).  The STAA also specifically enumerates termination and a reduction in hours—what Brooks asserts happened to her, (see id. at 14:9-18)—as adverse employment actions, see 49 U.S.C. § 31105(a)(1).  Finally, a plaintiff may demonstrate an inference of causation by adducing a close temporal proximity between the protected activity and the adverse action.  See Greatwide, 72 F.4th at 556-57 (citations omitted).  That Brooks was terminated within weeks of reporting STAA violations is sufficient to meet that standard here.  (See 10/29/24 Hr'g Tr. 14:1-16).  Brooks sets forth a *prima facie* case of discriminatory termination under the STAA.

All three <u>Chamberlain</u> factors also favor Brooks, who undoubtedly will be prejudiced if default judgment is denied because NVK caused her monetary and emotional harm for which she is entitled to, and has not yet received, compensation. The company's failure to plead or otherwise defend since at least June 2024 makes it difficult to determine whether it has a litigable defense. And given the company's failure to respond to several filings, motions, and orders, and to appear at the damages hearing despite having received constructive notice of those filings and proceedings, its decision not to plead or otherwise respond can only be attributed to culpable conduct. Accordingly, we find that entry of default judgment against NVK is appropriate.

### B.    Damages

Brooks' requested damages—back pay; compensatory damages for emotional distress; and punitive damages for NVK's reckless indifference to her federally protected rights[6]—require significant tabulation. Where, as here, the damages sought in default are not a sum-certain, the court must carefully assess the amount of damages to which a plaintiff is entitled. <u>See</u> FED. R. CIV. P. 55(b)(2)(B). The court may accept affidavits or hold an evidentiary hearing to make this determination. <u>See</u> <u>id.</u>; <u>Durant v. Husband</u>, 28 F.3d 12, 15 (3d Cir. 1994). Having held an evidentiary hearing in this matter, we address Brooks' requested damages *seriatim*.

---

[6] In her briefs in support of the present motion, Brooks requests attorney fees and costs. (<u>See</u> Docs. 26, 28). We will not address these requests here because Brooks' counsel stated at the evidentiary hearing that they will file a separate motion to address those demands after we issue our decision on the motion for default judgment. (<u>See</u> 10/29/24 Hr'g Tr. 26:13-24).

1.    *Back Pay*

Brooks' first request for damages is in the form of back pay.  (See Doc. 28 at 3-4).  The STAA provides that an employer who violates the act shall "pay compensatory damages, including backpay with interest."  See 49 U.S.C. § 31105(b)(3)(A)(iii); Maverick Transp., LLC v. U.S. Dep't of Lab., Admin. Rev. Bd., 739 F.3d 1149, 1157 (8th Cir. 2014) (citation omitted).  The purpose of back pay in this context, as in others, is "to make victims of unlawful discrimination whole by restoring them to the position they would have been in absent the discrimination." See Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 84 (3d Cir. 2009) (citing Loeffler v. Frank, 486 U.S. 549, 558 (1988)); see also Maverick Transp., 739 F.3d at 1157 (importing standards governing back pay awards issued pursuant to other antidiscrimination law, such as Title VII, to STAA claims) (citing E.E.O.C. v. Delight Wholesale Co., 973 F.2d 664, 670 (8th Cir. 1992)); U.S. Dep't of Lab. v. Copart, Inc., 431 F. App'x 758, 761 (10th Cir. 2011) (nonprecedential) (same).

Our court of appeals has directed us to calculate back pay by subtracting actual wages earned from what the individual would have earned had they not been unlawfully terminated.  See Gunby v. Pa. Elec. Co., 840 F.2d 1108, 1119-20 (3d Cir. 1988) (citing E.E.O.C. v. Eazor Exp. Co., 499 F. Supp. 1377, 1388 (W.D. Pa. 1980), aff'd, 659 F.2d 1066 (3d Cir. 1981) (unpublished table decision)).  The entitlement to back pay ends once a plaintiff finds new employment that is equivalent to or better than her previous position.  See Donlin, 581 F.3d at 84 (citing Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 236 (1982)).

10

In the matter *sub judice*, NVK paid Brooks, who was working between 50 and 80 hours in any given week, an hourly wage of $30. (See Hr'g Tr. 4:10-15; 18:3-11). Although Brooks testified to a range of hours she worked, she failed to supply documentation to support a more precise figure. We will assume a weekly average of 52.6 hours, which is the average of the hours Brooks reported working in six local trip reports that she introduced as evidence at the damages hearing. (See Doc. 28-1; see also Hr'g Tr. 6:23-7:22). This average also lies within the 50-to-80-hour range she identified. (See Hr'g Tr. 4:14-15; 18:7-11). We conclude that Brooks' annual pay while at NVK was approximately $82,056.[7]

There is evidence Brooks mitigated her damages while NVK unlawfully withheld her wages. She worked for Tyler Transport from February 2023 until she was laid off in November of that year; she then earned $29 an hour for part-time work (24 hours a week) at EVO Transportation beginning in August or September 2024 until the present. (See Hr'g Tr. 19:2-22:15). Brooks, however, did not provide compensation details for her position with Tyler Transport, and so we assume that the position paid her at least as much if not more than her work with NVK, meaning that she is not entitled to back pay for the time she was worked for Tyler Transport. But Brooks is entitled to back pay for her time at EVO Transportation because she made less than she did at NVK and only worked part time. See Weatherford, 68 F.4th at 1042 (noting that employee is entitled to back pay under

_____

[7] This is the product of 52 weeks per year, 52.6 hours per week, and $30 per hour.

STAA for period of lower-paying employment that began after higher-paying

mitigation employer terminated plaintiff for cause).  She was therefore unlawfully

deprived of the $82,056 she would have earned at NVK from the date of her

termination, November 13, 2022, until she started working at Tyler Transport in

February 2023, and once again from November 2023 until the damages hearing on

October 29, 2024, which totals one year, one month, and eighteen days (414 days or

1.13 years).[8]

Multiplying her wages by the length of time she was either unemployed or

worked for less pay, NVK would have owed Brooks at least $92,723.28 if it had

continued employing her at the same rate.  But we must subtract the $5,846.40

Brooks earned at EVO Transportation during the 8.4 weeks between September 1

and October 29, 2024, the date of the hearing in this matter.  Thus, Brooks is

---

[8] Brooks did not supply complete information regarding her employment history.  Given the partial information void in which we must scrutinize her entitlement to damages, we will construe disputes or uncertainties so as to minimize the back-pay award.  For example, because Brooks stated that Tyler Transport laid her off in November 2023, but did not provide a specific date for this event, we presume that she was working for Tyler until November 30, 2023, the last day of the month.  The dates used in our calculations are summarized in the chart below:

| Event | Date |
|---|---|
| Termination from NVK | November 13, 2022 |
| Start of work for Tyler Transport | February 1, 2023 |
| Laid off from Tyler Transport | November 30, 2023 |
| Start of work for EVO Transportation | September 1, 2023 |
| Damages Hearing | October 29, 2023 |

entitled to $86,876.88 in back pay, which equals the difference between those two amounts.[9]

### 2. *Compensatory Damages*

Brooks next seeks compensatory damages for emotional distress pursuant to 49 U.S.C. § 31105(b)(3)(A)(iii). (See Doc. 28 at 5). In STAA retaliation cases, as in other employment discrimination matters, an award of compensatory damages for emotional distress is subjective and remains within the factfinder's discretion. Maverick Transp., 739 F.3d at 1157 (citation omitted). Our court of appeals has cautioned, however, that plaintiffs seeking compensation for "mental distress" must adduce sufficient evidence of an "actual injury" caused by the defendant's misconduct, see Gunby, 840 F.2d at 1121 (citing, *inter alia*, Carey v. Piphus, 435 U.S. 247 (1978)), but need not present medical evidence or expert testimony, see Bolden v. SEPTA, 21 F.3d 29, 34 (3d Cir. 1994). We find that this requirement is satisfied by Brooks' testimony that she felt "conflicted" while employed at NVK, forced to choose between the penalties for disobeying her employer and those for violating the law. (See 10/29/24 Hr'g Tr. 20:24-23:7). That Brooks was forced to sell her townhome after being terminated also provides clear evidence of actual injury. (See id. at 15:6-19; 23:8-18). Brooks is entitled to compensatory damages.

Predictably, Brooks has not requested a specific compensatory damages award. Nor has she provided the court with medical evidence, expert testimony, or

---

[9] We will deny Brooks' request for pre-judgment interest on backpay, (see Doc. 26 at 4-5), because she has not provided any helpful information to assist the court in calculating the applicable amount of interest.

analogous caselaw.  Nonetheless, our research reveals that an award of between

$5,000 and $75,000 is appropriate for a "garden-variety" emotional distress claim

such as this.  See Brown v. B&D Land Clearing & Logging, LLC, No. 3:17-CV-1413,

2020 WL 13248680, at *4 (D. Conn. Mar. 3, 2020) (awarding plaintiff $10,000 where

plaintiff lost two apartments, had his power shut off, and was turned down for

multiple jobs); Maverick Transp., 739 F.3d at 1158 (8th Cir. 2014) (noting that award

of $75,000 was near "the high end of the range" and was only justified because

plaintiff lost home and experienced severe depression).

We find that an award towards the lower-middle end of the typical range is

appropriate in this case.  Brooks' termination caused intense emotional pain,

suffering, and mental anguish, though she did not seek professional counseling for

those injuries.  (See 10/29/24 Hr'g Tr. 20:16-22:7).  In addition, and as previously

noted, the sudden and substantial loss of income upended Brooks' life and caused

her to sell her home, relocate, and return to renting.  (See id. at 15:6-19; 23:8-18).

Based on the credible testimony presented by Brooks regarding the stress and

anxiety that NVK's actions have caused her, we will award $30,000 in emotional

distress damages.

### 3.    *Punitive Damages*

In her final request, Brooks seeks punitive damages.  (See Doc. 28 at 5).

Congress amended the STAA in 2007 to provide for up to $250,000 in punitive

damages.  See Weatherford, 68 F.4th at 1035 (citing Pub L. No. 110-53, § 1536,

121 Stat. 266, 464-47 (Aug. 3, 2007)); see also 49 U.S.C. § 31105 (b)(3)(C).  Such an

award under the statute "is inherently penal in nature."  See Weatherford, 68 F.4th

at 1036.  And to obtain one a plaintiff must show that the employer was recklessly

indifferent to the plaintiff's federally protected rights or knew of a potential

violation; a mere showing that the employer was aware of the discrimination is

insufficient.[10]  See Kant v. Seton Hall Univ., 279 F. App'x 152, 158 (3d Cir. 2008)

(nonprecedential) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999)).  Put

differently, punitive damages are only appropriate when "the defendant's conduct

amounts to something more than a bare violation justifying compensatory

damages."  See Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir. 1978).  If punitive

damages are appropriate, the court may consider evidence of a defendant's assets,

net worth, and financial condition when determining an award amount.  See

Johnson v. Fed. Express Corp., No. 1:12-CV-444, 2014 WL 805995, at *12 (M.D. Pa.

Feb. 28, 2014) (Conner, C.J.) (citing, *inter alia*, Forsyth v. Kleindienst, 700 F.2d 104,

106 (3d Cir. 1983)).

    We find that Brooks is entitled to punitive damages because she clearly

demonstrated that NVK was aware of the ongoing violations of her rights.  Brooks

formally complained to company management about the unlawful working

conditions, but no one investigated the concerns before firing her.  (See 10/29/24

Hr'g Tr. 10:9-15; 12:24-14:18).  Instead, NVK promptly fired her without cause.  (See

id.)  This is enough to show reckless indifference, if not outright knowledge.  Brooks

has not provided record evidence regarding NVK's financial condition, but we find,

---

[10] Because our court of appeals has not yet announced a specific standard for
awarding punitive damages under the STAA, we look to well-developed caselaw
regarding the issuance of these awards pursuant to other substantive law.

after a review of analogous cases, that an award of punitive damages equal to

Brooks' compensatory damages is appropriate.  See CGB Occupational Therapy,

Inc. v. RHA Health Servs., Inc., 499 F.3d 184, 188-89, 192 (3d Cir. 2007) (noting

courts must consider the ratio of punitive damages to the "actual harm" inflicted on

plaintiff) (citing, *inter alia*, BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580 (1996));

see, e.g., Kennedy v. Supreme Forest Prods., Inc., 295 F. Supp. 3d 113, 123 (D. Conn.

2017) (citation omitted) (approving $250,000 punitive damages award, equivalent to

21 times compensatory damages award and STAA maximum; and noting that

punitive damages awards in retaliatory discharge cases advanced under other

antidiscrimination laws generally range from $25,000 to $1.25 million in egregious

cases).  Though NVK certainly behaved recklessly with regard to Brooks' STAA

rights, the conduct was short-lived and was not so outrageous as to warrant

exceeding a one-to-one ratio of compensatory to punitive damages in this case.  We

will award Brooks $30,000 in punitive damages against NVK.

## III.    Conclusion

We will grant Brooks' motion for default judgment and award her damages

and relief as outlined above.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     January 13, 2025